COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 02-04-189-CR
 
 
EUFEMIO 
FRANCISCO DIAZ                                                    APPELLANT
  
V.
 
THE 
STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM 
THE 213th DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        Appellant 
Eufemio Francisco Diaz appeals from his conviction for aggravated robbery with a 
deadly weapon.  In one issue, Diaz contends that the trial court erred by 
denying his motion to suppress certain statements made to the police.  
Specifically, Diaz argues that the trial court should have suppressed his 
statements because the totality of the circumstances were coercive and rendered 
his statements involuntary.  We will affirm.
        “A 
statement of an accused may be used in evidence against him if it appears that 
the same was freely and voluntarily made without compulsion or persuasion . . . 
.” Tex. Code Crim. Proc. Ann. art. 38.21 
(Vernon 1979); Campos v. State, 977 S.W.2d 458, 464 (Tex. App.—Waco 
1998, no pet.). Whether a defendant's statement is voluntary is determined from 
the totality of the circumstances surrounding the giving of his statement. See 
Penry v. State, 903 S.W.2d 715, 748 (Tex. Crim. App.), cert. denied, 
516 U.S. 977 (1995); Reed v. State, 59 S.W.3d 278, 281 (Tex. App.—Fort 
Worth 2001, pet. ref’d). A statement is not voluntary if there was 
“official, coercive conduct of such a nature that any statement obtained 
thereby was unlikely to have been the product of an essentially free and 
unconstrained choice by its maker.”  Alvarado v. State, 912 S.W.2d 
199, 211 (Tex. Crim. App. 1995).  Coercion does not occur without police 
conduct that is causally related to the confession.  See Colorado v. 
Connelly, 479 U.S. 157, 164, 107 S. Ct. 515, 520 (1986); Penry, 903 
S.W.2d at 746 n.27.
        Diaz 
contends that the facts and circumstances surrounding his statements show that 
they were coerced.  As support for his assertion, Diaz points out that at 
the time of the statements, he was handcuffed in the back of a patrol car, 
soaking wet and shivering.  Further, Diaz asserts that his statements were 
coerced because Officer David Shinpaugh told him that police needed to know 
where the guns were because they had officers in the woods and they wanted to 
make sure no one got hurt.  Diaz argues that this statement could imply 
that he would be hurt if he did not tell police where the guns were.
        Evidence 
at the pretrial suppression hearing was presented solely through Grand Prairie 
Police Officer David Edward Shinpaugh’s testimony.  Officer Shinpaugh 
testified that he was on patrol when he heard shots fired and that he received a 
call that shots had been fired in the course of an aggravated robbery.  
Officer Shinpaugh testified that a few minutes after hearing the shots, another 
officer reported observing a car go off into the woods and wreck and that he (Shinpaugh) 
then went to that location.  Officer Shinpaugh stated that Diaz was located 
by another police officer at the scene of the wreck, in a creek bed.  He 
testified that the cold and wet Diaz was taken into custody, handcuffed, and 
placed in the back of the patrol car with the heater on.  Officer Shinpaugh 
testified that he read Diaz his Miranda warnings and that Diaz indicated 
that he understood and waived those rights.  Officer Shinpaugh testified 
that he explained to Diaz “what [police] were investigating, and that [police] 
knew there were guns involved.”  He also testified that he told Diaz that 
police “had officers in the woods” and that they “needed to know where the 
guns were [and] how many more people there were.”  Officer Shinpaugh 
stated that he told Diaz the police did not “want anybody getting hurt,” 
that they did not “want any officers hurt,” and that they “just needed to 
resolve the situation.”  Officer Shinpaugh testified that Diaz gave him 
the street names of two other individuals who were involved and told him that 
they had used two guns, a 38 snub-nose and 45 semiautomatic pistol, and where 
the guns were thrown from the car. Officer Shinpaugh also testified that Diaz 
told him that there were multiple shots fired at an address on March Lane, that 
he was one of the shooters, that the car he was driving was stolen, and that one 
of the co-actors gave a gun to him before they arrived at the scene of the 
offense.  Officer Shinpaugh testified that Diaz did not ask for an attorney 
or request to end the interview.  Shinpaugh also testified that he did not 
make any promises, threats or attempts to intimidate Diaz.  Finally, 
Officer Shinpaugh testified that using Diaz’s information, the police located 
two handguns.
        At 
the conclusion of the pre-trial suppression hearing, the trial court denied 
Diaz’s motion to suppress his statements, finding that the “statements were 
freely and voluntarily made under voluntary conditions” and that the 
statements were “admissible as a matter of fact and law under Article 38.22 
subsection 3(c)” of the code of criminal procedure.  The trial court 
later entered detailed findings of fact and conclusions of law in the case.
        Applying 
the appropriate standard of review,[2] we hold that 
the trial court did not abuse its discretion in denying Diaz’s motion to 
suppress because the evidence supports a finding that Diaz’s confession was 
freely and voluntarily given without coercion.  See Campos, 977 
S.W.2d at 464.  The record reflects that Diaz was provided with Miranda 
warnings.  The record further reflects that Officer Shinpaugh did not make 
Diaz any promises, that he did not threaten Diaz, or attempt to intimidate 
him.  Finally, we find nothing in the record to support Diaz’s contention 
that Officer Shinpaugh’s statements implied that Diaz would be hurt if he did 
not talk.  The trial court is the sole finder of fact, and its findings 
will not be disturbed on appeal if there is any supporting evidence.  See 
Carrasco v. State, 712 S.W.2d 120, 122 (Tex. Crim. App. 1986).  Thus, 
because there is evidence that Diaz’s statements were voluntary, we hold that 
the trial court did not abuse its discretion when it denied Diaz’s motion to 
suppress.  We overrule Diaz’s sole issue and affirm the trial court’s 
judgment.
  
   
                                                                  BOB 
MCCOY
                                                                  JUSTICE
 
 
  
PANEL 
B:   DAUPHINOT, WALKER, and MCCOY, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
March 31, 2005


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
See Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000) 
(applying a bifurcated standard of review to a motion to suppress, giving almost 
total deference to findings of facts and reviewing de novo conclusions of 
law); Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999) (stating 
a motion to suppress is reviewed de novo when reviewing a question of law 
based on undisputed facts); Guzman v. State, 955 S.W.2d 85, 89 (Tex. 
Crim. App. 1997) (explaining that reviewing courts should afford almost total 
deference to rulings on application of law to fact questions, or mixed questions 
of law and fact, when their resolution turns on an evaluation of credibility and 
demeanor, but may review de novo mixed questions of law and fact not 
falling within this category).