James Lawrence Thomas v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-537-CR

JAMES LAWRENCE THOMAS APPELLANT

A/K/A JAMES THOMAS

V.

THE STATE OF TEXAS STATE

------------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant James Lawrence Thomas appeals his convictions for aggravated sexual assault of a child and indecency with a child.  A jury found Thomas guilty and assessed his punishment at ninety-nine years’ and twenty years’ confinement, respectively, and the trial court sentenced him accordingly.  In two issues, Thomas contends that the trial court abused its discretion by excluding defense evidence and by admitting pornographic images police recovered from Thomas’s computer.  We will affirm
.

II.  Factual and Procedural Background

Thomas married Melissa in July of 2001 after living with her and her two children, B.N.M. and J.T.C., for one year.  At the time, B.N.M. was eight years old.  On March 17, 2003, B.N.M. confided to her mother that Thomas had been showing her “sexual things” on the computer and touching her in her private areas and that it had been going on since before Melissa and Thomas married. 
That night, Melissa and her two children moved out of the house, but Melissa returned on March 19th and confiscated the hard drives from the three computers in their home. 

A computer forensics examiner, Detective Mark Stephens, retrieved 22,000 graphic images from the hard drive of Thomas’s home office computer. Detective Stephens also found the term “Lolita”—a term commonly used in child pornography—on the hard drive 12,933 times and the term “incest” 3,402 times. 

A grand jury indicted Thomas on five counts of aggravated sexual assault of a child and two counts of indecency with a child, but the State later elected to proceed on one count of aggravated sexual assault and one count of indecency with a child.  At trial, B.N.M. testified that Thomas sometimes showed her pictures on the computer in his home office.  She explained that there were pictures of children and adults posing nude and also of adults engaged in sexual activities with other adults, children, and animals.  B.N.M. testified that Thomas would ask her to pose like the people in the pictures. The State also called Detective Stephens to testify concerning the images he retrieved from the three hard drives.  During its direct examination of the detective, the State introduced into evidence State’s Exhibit 3 without objection from Thomas’s defense attorney.  State’s Exhibit 3 consists of twenty-one images of teenaged girls engaging in sexual acts with adult males or posing in a sexual manner.  When the State sought to introduce into evidence State’s Exhibit 4—twenty images of a pre-adolescent child posing partially and fully nude—defense counsel objected that the evidence was cumulative and irrelevant in light of State’s Exhibit 3.  The trial court overruled defense counsel’s objection and admitted the images.  

Thomas took the stand at trial.  He could not explain the accusations against him except to suggest that B.N.M.’s mother may have influenced B.N.M. to falsely accuse him.  Thomas’s defense counsel then sought to introduce into evidence a proposed divorce decree that awarded Melissa an unequal division of the couple’s marital property; Melissa’s divorce attorney had sent the proposed decree to Thomas.  The trial court sustained the State’s objection that the unsigned decree was irrelevant because it was not a final judgment.  Later in his testimony, Thomas alleged that Melissa may have influenced B.N.M. to falsely accuse him of sexual assault in order to get out of the marriage.  Thomas also testified that he never intentionally downloaded child pornography and that he would delete it when he found it on his computer.  He explained that he used the term “Lolita” to search for Hispanic or Spanish adult pornography.   

III.  Standard of Review

We review a trial court’s decision to admit evidence under an abuse of discretion standard.  
Kelly v. State
, 824 S.W.2d 568, 573-74 (Tex. Crim. App. 1992); 
Montgomery v. State, 
810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh’g).  The trial court has broad discretion in determining the admissibility of evidence, and we may overturn the court’s ruling only if it is so clearly wrong that the ruling lies outside the zone of reasonable disagreement.  
See Montgomery
, 810 S.W.2d at 391.  

IV.  No Abuse of Discretion in Exclusion of Proposed Divorce Decree

In his first issue, Thomas complains that the trial court abused its discretion by excluding the unsigned copy of the divorce decree sent to him by Melissa’s divorce attorney.  Specifically, Thomas alleges that the decree was relevant because it proposed an unequal division of the marital property, thus supporting his only defense—that Melissa influenced her daughter to falsely accuse Thomas in order to gain an advantage in their divorce proceedings.  The State maintains that because Thomas did not raise this contention when he offered the decree into evidence, the trial court did not abuse its discretion by excluding the decree as irrelevant.   

In order to be admissible, the evidence must be relevant as defined by rule 401 of the Texas Rules of Evidence.  
Tex. R. Evid.
 401.  Pursuant to rule 401, evidence is relevant if it has “any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.”  
Id
.  
The proponent of the evidence has the burden of demonstrating the relevance of the evidence.  
See Garza v. State
, 18 S.W.3d 813, 822 (Tex. App.—Fort Worth 2000, pet. ref’d).   The appellate court must review the trial court's ruling in light of what was before the trial court at the time that the trial court made the ruling. 
 Weatherred v. State
, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).  
In determining whether evidence is relevant, courts look to the stated purpose for offering the evidence and to whether there is a direct or logical connection between the offered evidence and the proposition sought to be proved.
  Reed v. State
, 59 S.W.3d 278, 281 (Tex. App.—Fort Worth 2001, pet. ref'd). 
Before Thomas offered the proposed divorce decree into evidence, he testified that Melissa is the only person in B.N.M.’s life who has enough influence over B.N.M. to be able to convince her to falsely accuse him of sexual assault.  At that time, however, Thomas did not allude to any motive for Melissa to encourage her daughter to falsely accuse him.  Additionally, when Thomas’s defense counsel offered the proposed divorce decree into evidence, she did not inform the trial court of her purpose in introducing the evidence, nor did she make any attempt to explain its relevance.  Thomas’s testimony went on for over twenty-five pages before he suggested that Melissa may have influenced her daughter to lie so that Melissa could get out of the marriage. When Thomas offered the proposed divorce decree into evidence, he had the burden of establishing that the evidence was relevant.  
See Garza
, 18 S.W.3d at 822.  However, he failed to meet this burden, and we cannot say that the trial court acted outside the zone of reasonable disagreement by sustaining the State’s objection that the proposed decree was irrelevant at the time it was offered.  
See Montgomery
, 810 S.W.2d at 391.  Even if Thomas had explained to the trial court his reason for introducing the proposed divorce decree, the trial court could have reasonably determined that the proffered evidence did not have any tendency to make the existence of any fact of consequence to the determination of the action—Thomas’s alleged sexual assault of and indecency with B.N.M.—more probable or less probable.  
See 
Tex. R. Evid.
 401.  

The proposed decree indicates that the district court heard Melissa and Thomas’s divorce proceedings on September 8, 2003—almost six months after B.N.M. told her mother that Thomas had been touching her.  There is no evidence that Melissa and Thomas had even discussed divorce until after Melissa learned of Thomas’s alleged sexual assault of her daughter.  It is logical that Melissa decided to divorce Thomas after learning of B.N.M.’s allegations that Thomas had been sexually assaulting her for three years and that she sought a disproportionate amount of the marital property for that reason.  Thus, although Thomas sought to introduce the proposed decree to prove Melissa’s motive in influencing B.N.M. to lie about the sexual assault, the trial court could have reasonably concluded that no logical connection existed between the proposed divorce decree and this proposition.
  See Reed
, 59 S.W.3d at 281. We hold that the trial court’s decision to exclude the proposed divorce decree does not fall “outside the zone of reasonable disagreement.” 
See Montgomery
, 810 S.W.2d at 391.  Accordingly, the trial court did not abuse its discretion by excluding the evidence.  
See Kelly
, 824 S.W.2d at 573-74; 
Montgomery, 
810 S.W.2d at 391.  We overrule Thomas’s first issue.

V.  No Abuse of Discretion in Admission of Pornographic Images

In his second issue, Thomas contends that the trial court abused its discretion by admitting as State’s Exhibit 4 images of a young girl found on Thomas’s computer.  Thomas argues that the images were cumulative of the other pornographic images introduced in State’s Exhibit 3 and that the probative value of these images was substantially outweighed by their prejudicial effect. Rule 403 provides that “[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by 
the danger of unfair prejudice
, confusion of the issues, or misleading the jury, or by considerations of undue delay, or 
needless presentation of cumulative evidence
.”  
Tex. R. Evid.
 403 (emphasis added).  A rule 403 analysis by the trial court should include, but is not limited to, the following considerations:  (1) the probative value of the evidence; (2) the potential of the evidence to impress the jury in some irrational, indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent’s need for the evidence.  
See Erazo v. State
, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004).  Concerning probativeness, photographs generally are admissible if verbal testimony of the matters depicted in the photographs is also admissible as long as their probative value is not outweighed by any prejudicial effect.  
Potter v. State
, 74 S.W.3d 105, 112 (Tex. App.—Waco 2002, no pet.) 
(citing 
Ramirez v. State
, 815 S.W.2d 636, 647 (Tex. Crim. App. 1991)).

With respect to Thomas’s claim that the images in State’s Exhibit 4 were inadmissible because they were needlessly cumulative, the concern for needless presentation of cumulative evidence involves the efficiency of the judicial process rather than the threat of inaccurate decisions.  
See Alvarado v. State
, 912 S.W.2d 199, 212 (Tex. Crim. App. 1995).  The trial court must balance the probativeness of the evidence against the tendency, if any, that the evidence has to prolong the trial to the defendant’s detriment.  
Ladd v. State
, 3 S.W.3d 547, 569 (Tex. Crim. App. 1999) (citing 
Alvarado
, 912 S.W.2d at 213), 
cert. denied
, 529 U.S. 1070 (2000).  

Here, the images in State’s Exhibit 3 portray teenage girls performing sexual acts with an adult male and posing in a sexual manner, but the images in State’s Exhibit 4 portray a younger pre-adolescent girl posing partially and fully nude and are not as sexually explicit as those in State’s Exhibit 3.  The images in State’s Exhibit 4 are clearly not cumulative because they address different points from those addressed in State’s Exhibit 3.  
See Alvarado, 
912 S.W.2d
 
at 213 (quoting 
Goode, Wellborn & Sharlot
, 
Guide to the Texas Rules of Evidence 
§ 403.3 (2d ed. 1993)) (defining cumulative to mean that “‘other evidence on the same point has been already received’”).  The State explains that it presented the second set of images (State’s Exhibit 4) to illustrate Thomas’s sexual interest in pre-adolescent girls the same age as B.N.M.; to support Detective Stephens’s testimony that the term “Lolita” retrieves child pornography, not Hispanic adult pornography as Thomas suggested; and to corroborate B.N.M.’s testimony that Thomas showed her pictures of people posing nude and asked her to pose like the girls in the pictures.  Thus, State’s Exhibit 4 did not present cumulative evidence as Thomas suggests.  
See id.
 Turning to the rule 403 considerations, Detective Stephens testified concerning the images of the pre-adolescent girl recovered from Thomas’s computer’s hard drive, and B.N.M. testified concerning the images Thomas showed her on his computer.  The images in State’s Exhibit 4 tended to corroborate both Detective Stephen’s and B.N.M.’s testimony and thus had the probative value of strengthening this testimony.  
See Lewis v. State
, 505 S.W.2d 603, 604 (Tex. Crim. App. 1974) (holding that probative value is established if photograph is needed to corroborate witness’s observations and conclusions).  We also conclude that the images in State’s Exhibit 4 do not tend to impress on the jury in an irrational and indelible way.  The age of the girl in the images is disturbing, but she is not performing any sexual act, making these images less likely to impress on the jury in an irrational way and certainly less likely to prejudice the jury than the images admitted without objection in State’s Exhibit 3.  
Cf. Taylor v. State
, 93 S.W.3d 487, 506-07 (Tex. App.—Texarkana 2002, pet. ref’d) (excluding graphic story of adults raping children as likely to encourage jury to resolve material issues on emotional and irrational basis).  Thomas admits that the State did not spend an excessive amount of time developing the evidence; Detective Stephens’s testimony amounts to thirty-five pages from a 310-page record.  
Cf. Booker v. State
, 103 S.W.3d 521, 536 (Tex. App.—Fort Worth 2003, pet. ref’d) (op. on reh’g) (noting third 
Montgomery
 factor weighed in favor of excluding extraneous offense when trial time spent proving extraneous offense exceeded time spent proving charged offense).  Finally, the State had other ways to elicit the evidence—Detective Stephens’s testimony concerning these images—but that testimony could not as accurately depict for the jurors the exact age of the young girl in the images.

We have reviewed the images and conclude that the trial court acted within its discretion by determining that the probative value of State’s Exhibit 4 was not greatly outweighed by the prejudicial effect of the images or by needless presentation of cumulative evidence.  We hold that the trial court acted within its discretion by admitting State’s Exhibit 4.  
See Kelly
, 824 S.W.2d at 573-74; 
Montgomery, 
810 S.W.2d at 391.  We overrule Thomas’s second issue.

VI.  Conclusion

Having overruled each of Thomas’s two issues, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL B: LIVINGSTON, GARDNER, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: December 8, 2005

FOOTNOTES
1:
See
 
Tex. R. App.
 P. 47.4.